UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C., Plaintiff,** | * * * | **CIVIL ACTION** |
| | * | **NO. 23-4951-WBV-KWR** |
| **VERSUS** | * * | |
| | * | **SECTION: D(4)** |
| **ARCH SPECIALTY INSURANCE COMPANY, Defendant.** | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## FIRST AMENDED COMPLAINT

Plaintiff, SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C. ("Sher Garner") respectfully submits this First Amended Complaint against defendant, ARCH SPECIALTY INSURANCE COMPANY ("Arch") and alleges as follows:

## PARTIES

### 1.

Plaintiff, Sher Garner, is a Louisiana limited liability company domiciled in Orleans Parish, Louisiana. Each member of Sher Garner is a citizen of the State of Louisiana as follows:

(1) Leopold Z. Sher, an individual domiciled in and a citizen of Louisiana;

(2) James M. Garner, an individual domiciled in and a citizen of Louisiana;

(3) Elwood F. Cahill, Jr., an individual domiciled in and a citizen of Louisiana;

(4) Richard P. Richter, an individual domiciled in and a citizen of Louisiana;

(5) Steven I. Klein, an individual domiciled in and a citizen of Louisiana;

(6) Peter L. Hilbert, Jr., an individual domiciled in and a citizen of Louisiana;

(7) Marie A. Moore, an individual domiciled in and a citizen of Louisiana;

(8) Debra J. Fischman, an individual domiciled in and a citizen of Louisiana;

(9) Martha Y. Curtis, an individual domiciled in and a citizen of Louisiana;

(10) Neal J. Kling, an individual domiciled in and a citizen of Louisiana;

(11) Joshua S. Force, an individual domiciled in and a citizen of Louisiana;

(12) John T. Balhoff, II, an individual domiciled in and a citizen of Louisiana;

(13) Alvin C. Miester, III, an individual domiciled in and a citizen of Louisiana;

(14) Ryan D. Adams, an individual domiciled in and a citizen of Louisiana;

(15) Thomas J. Madigan, II, an individual domiciled in and a citizen of Louisiana;

(16) Chad P. Morrow, an individual domiciled in and a citizen of Louisiana;

(17) Jeffrey D. Kessler, an individual domiciled in and a citizen of Louisiana;

(18) Ryan O. Luminais, an individual domiciled in and a citizen of Louisiana;

(19) Ashley Gremillion Coker, an individual domiciled in and a citizen of Louisiana;

(20) Jonathan B. Cerise, an individual domiciled in and a citizen of Louisiana;

(21) Amanda Russo Schenck, an individual domiciled in and a citizen of Louisiana; and

(22) Travis A. Beaton, an individual domiciled in and a citizen of Louisiana.

**2.**

Defendant, Arch, is a Missouri corporation with its principal place of business in New Jersey and may be served through General Counsel, Arch Specialty Insurance Company, Harborside 3 210 Hudson Street, Suite 300, Jersey City, NJ 073311-1107.

**JURISDICTION**

**3.**

This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

## **VENUE**

**4.**

Venue is proper in this judicial district pursuant to articles 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted in this lawsuit occurred in this judicial district.

## **FACTS**

**I.     THE POLICY.**

**5.**

Sher Garner is a law firm located in New Orleans, Louisiana.

**6.**

Sher Garner had an insurance policy with Arch that was in effect on August 29, 2021.

**7.**

In 1999, Sher Garner began leasing offices located at 909 Poydras Street, New Orleans, Louisiana.  Arch misrepresented the facts when it said that Sher Garner had only been a building tenant "since 2005" in its September 30, 2021 expert report attached to its January 11, 2022 letter.  Sher Garner first rented space on Floor 28 and then later on Floors 27 and 28 which Sher Garner built out and improved to suit its needs, the "Tenant Betterment and Improvements" or "TI."  As part of its lease, Sher Garner was obligated to obtain property insurance to cover its leased space.  Sher Garner's policy was with Arch to cover its office space at 909 Poydras.

**8.**

Arch issued to Sher Garner insurance policy number ESP730104807 which was in effect on August 29, 2021 .

**9.**

The Policy provides coverage for, among other things, damage or loss to, Sher Garner's TI, business personal property, and lost business income.

**10.**

On August 29, 2021, Hurricane Ida made landfall in South Louisiana as a category 4 or 5 storm, with winds up to 150 mph.

**11.**

Hurricane Ida caused numerous storm-created openings in the exterior of the building at 909 Poydras Street, including but not limited to knocking out glass windows, having windows pull pack from their seals due to hurricane pressure and forcing a sliding door on the 31st floor above Sher Garner's offices to fly open and allowing water intrusion. The pressure from the storm also breached the seals around numerous windows at 909 Poydras, causing significant water intrusion into Sher Garner's leased premises.

**12.**

As a result of these breaches, Sher Garner's offices sustained significant water damage to the TI including, but not limited to, saturated sheetrock, ceilings, carpets, and baseboards. Several exterior offices and interior work spaces suffered water damage.

**13.**

Louisiana Insurance Commissioner Jim Donelon issued Directive 218 on September 7, 2021 under the authority of La. Rev. Stat. §§ 22:2(A)(1), (E); 22:11(A); and 22:861. Therein, he directed all authorized insurers and surplus lines insurers to treat the multiplicity of actions and communication by all public officials in connection with Hurricane Ida as being tantamount to an order to evacuate that fulfills any policy requirement contained in any insurance contract which implies the need for a civil authority to issue a mandatory evacuation order.

**14.**

As a result of this civil authority, as well as covered losses to the TI, Sher Garner sustained a loss of Business Income and Extra Expenses due to the suspension of its operations, and prohibition from accessing the offices, commencing on August 28, 2021.

**15.**

Sher Garner has completed restoration of the TI, but Arch has refused to pay it anything regarding its Hurricane Ida claim.

## II.   ARCH'S BAD FAITH HANDLING OF SHER GARNER'S CLAIM

**16.**

Sher Garner contacted Arch and made a claim for property damages to the TI and loss of business income.

**17.**

Sher Garner immediately began remediation efforts. For example, de-humidifiers and fans were installed in an attempt to dry out the TI.

**18.**

Sher Garner understands that another tenant in the building on a lower floor than its floor, obtained an Affidavit from Mike Ruiz, the Chief Building Engineer at 909 Poydras Street. In his affidavit, Mr. Ruiz confirmed that a sliding door on the 31st floor was forced open during the storm. *See* Exhibit A. This, combined with the water which entered Sher Garner's offices through breaches in the window seals, is beyond doubt that Sher Garner's TI were damaged by a covered occurrence.

**19.**

On January 11, 2022, Arch advised that, although Sher Garner experienced water intrusion during Hurricane Ida including "along exterior walls at the south and east elevations and at an interior area on the ***27th floor***," there is "no coverage for any of the loss and damage being claimed." The 10-page letter from Arch does not even acknowledge damage on Sher Garner's 28th floor.

**20.**

Arch's expert reported that "[c]ompared with reported wind speeds over a 15-year period prior to the hurricane, sustained and gust wind speeds on August 29, 2021 were the highest wind speeds experienced by the building." This conclusion was apparently based on wind speeds at the New Orleans International Airport; however, sustained and gust wind speeds in downtown New Orleans where Sher Garner's property is located were even higher.

**21.**

Arch erroneously concluded that the damage to Sher Garner's TI was "due to wear-and-tear and are not the result of the hurricane" and that "No hurricane-related openings were observed on the building at the 27th or above that would affect the offices of Sher Garner." It does not appear that Arch knew about the 31st floor sliding glass door being forced open during the storm which was definitely above Sher Garner's 27th Floor nor that Arch discussed the situation with Chief Building Engineer Mike Ruiz. Moreover,

Arch claims that Sher Garner's losses on the 27th Floor were allegedly due to the terrace above it on the 28th Floor.  However, Arch's own expert report shows damage to Sher Garner's spaces on the 28th Floor, including Conference Room D, which is on the same floor as the terrace at issue and therefore could not have had water coming from it from above.  *See* especially Figure 18, Conference Room D with a picture of a water stain on the "ceiling."

**22.**

To date, Arch has refused to cover or pay for any of Sher Garner's property damages to the TI or its business income loss.

**23.**

Arch's arbitrary and capricious handling of Sher Garner's property damage and business income claim is in violation of its duty of good faith and fair dealing mandated under Louisiana statutory law, as well as the unambiguous terms of the Policy.

## COUNT I:  BREACH OF CONTRACT
**(Business Property Claim)**

**24.**

Sher Garner adopts and realleges each and every allegation set forth in the preceding paragraphs.

**25.**

The Policy is a binding insurance contract by and between Sher Garner and Arch.

**26.**

Sher Garner sustained covered property losses to its TI.

**27.**

Sher Garner complied with the Policy's terms and conditions; Sher Garner paid all premiums on the Policy; Sher Garner provided Arch with all documents and records requested of it; and all conditions precedent to Sher Garner's right to recover against Arch under the Policy have been met, satisfied, or waived.

**28.**

Arch however, has breached the Policy in the following, non-exclusive ways:

1. Failing to timely provide a coverage determination to Sher Garner;

2. Failing to timely and thoroughly adjust Sher Garner's property damage claims;

3. Misrepresenting, among other things, that damage to ceilings on property on the 28th Floor was the result of dripping water from a terrace on the 28th Floor;

4. Denying coverage of Sher Garner's property damage claims; and

5. Failing to pay Sher Garner its covered losses.

**29.**

Sher Garner has suffered damages as a result of Arch's breaches of contract for which Arch is responsible including but not limited to all of Sher Garner's covered property damage losses, plus interest, and attorney's fees.

### COUNT II:  BREACH OF CONTRACT
### (Business Income and Extra Expenses Claim)

**30.**

Sher Garner adopts and realleges each and every allegation set forth in the preceding paragraphs.

**31.**

The Policy is a binding insurance contract by and between Sher Garner and Arch.

**32.**

Sher Garner sustained covered losses under the Policy for Business Income and Extra Expenses.

**33.**

Sher Garner sustained covered Business Income and Extra Expense losses covered under the Policy pursuant to the Civil Authority provision as Sher Garner was prohibited from accessing its premises on the authority of public officials, and

both before and after access was allowed, several of Sher Garner's employees were unable to work from its offices due to the Hurricane Ida-related damage until the property was restored.

**34.**

Because Arch did not cite any reason for failing to pay Sher Garner's Business Income claim other than the incorrect "wear-and-tear" argument above in its January 11, 2022 denial letter, Arch has waived any other Policy reasons for failing to pay Sher Garner's Business Income and Extra Expense losses.

**35.**

Sher Garner complied with the Policy's terms and conditions; Sher Garner paid all premiums on the Policy; Sher Garner provided Arch with all documents and records requested of it; and all conditions precedent to Sher Garner's right to recover against Arch under the Policy have been met, satisfied, or waived.

**36.**

Arch, however, has breached the Policy in the following, non-exclusive ways:

1. Failing to timely provide a coverage determination to Sher Garner;

2. Failing to timely adjust Sher Garner's Business Income claim;

3. Arbitrarily determining that Sher Garner is not entitled to any

>   Business Income either via Civil Authority coverage or due to its property damage from Hurricane Ida; and
>
> 4. Failing to pay Sher Garner any Business Income or Extra Expense Losses.

**37.**

Sher Garner has suffered damages as a result of Arch's breaches of contract for which Arch is responsible including but not limited to Sher Garner's Business Income and Extra Expense losses whether due to Civil Authority or Hurricane Ida damage, plus interest, and attorney's fees.

## COUNT III:  BREACH OF DUTY OF GOOD FAITH

**38.**

Sher Garner adopts and realleges each and every allegation set forth in the preceding paragraphs.

**39.**

By failing to pay all covered losses under the Policy as required by its terms and conditions, Arch breached its contractual obligations to Sher Garner, the direct and proximate result of which caused Sher Garner to sustain damages and losses in an amount to be proven at trial.

**40.**

In breaching the Policy, Arch breached its corollary duties of good faith as contemplated by Articles 1759, 1983, 1996, and 1997 of the Louisiana Civil Code and other applicable laws.  Arch, therefore, is liable to Sher Garner for all foreseeable and unforeseeable damages that its conduct caused Sher Garner.

**COUNT IV:  STATUTORY PENALTIES AND ATTORNEY'S FEES**

**41.**

Sher Garner adopts and realleges each and every allegation set forth in the preceding paragraphs.

**42.**

Arch failed to pay Sher Garner's claims within 30 and/or 60 days of satisfactory proof of loss and/or this Complaint is a satisfactory proof of loss for which Arch should pay Sher Garner within 30 and/or 60 days. Arch also misrepresented pertinent facts and provisions of the Policy, failed to make reasonable attempts to settle the claims, failed to conduct a reasonable investigation into the claims, failed to reasonably evaluate the available information, denied the claims, and failed to pay the claims.  The foregoing, as well as Arch's overall handling of this claim, was arbitrary, capricious, and without probable cause and amounts to a

failure by Arch to comply with its statutory obligations under La. Rev. Stat. §§ 22:1892 and/or 1973.

**43.**

As a result of its arbitrary and capricious failure to pay Sher Garner's claims within thirty (30) days of its receipt of satisfactory proofs of loss, and other violations, Arch is liable under La. Rev. Stat. § 22:1892(B)(1), in addition to the amount of the loss, for a penalty of 50% of the amount found to be due, as well as reasonable attorney fees and costs.

**44.**

As a result of Arch's bad faith, arbitrary and capricious conduct, including but not limited to, its numerous misrepresentations of fact and Policy provisions, its failure to pay Sher Garner's claims within sixty (60) days of its receipt of satisfactory proofs of loss, and other breaches of its duty of good faith, Arch is liable under La. Rev. Stat. § 22:1973(C), in addition to all general and special damages, for a penalty of two times the damages sustained by Sher Garner.

**WHEREFORE**, Plaintiff prays that this Complaint be deemed good and sufficient and after due proceedings are had that judgment be entered in its favor and against defendant, Arch, for all relief requested herein and for such other and further relief as is appropriate under the circumstances.

Respectfully submitted,

*/s/ James M. Garner*

_____
JAMES M. GARNER, T.A., #19589
MARTHA Y. CURTIS, #20446
AMANDA R. SCHENCK, #30706
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 2800
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
**ATTORNEYS FOR PLAINTIFF SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**